Your Honor, in this case, Appellant Jordan was convicted by a jury of aiding and abetting armed credit union robbery and aiding and abetting the brandishing of a firearm in relationship to a crime of violence. In Issue 1, Mr. Jordan argues that the evidence is insufficient to sustain both convictions. In this case, we do know that an attempted robbery took place. The evidence, however, does not demonstrate that Mr. Jordan in fact participated in the armed robbery or in the aiding and abetting and brandishing of the firearm. In this case, the government's built a case around the fact that there was surveillance on two cell phones here. One ended in 6601 and one ended in numbers 2498. And the reference to 2497 in the reply brief actually should be 2498. So the phones are 6601 and 2498. And so in this case, the government's claim or the theory of the case is that because the cell phones were in the area of the credit union robbery in Katy, Texas. Then therefore, Appellant Jordan must have participated in those robberies. However, the evidence at trial showed that on the video, no one could actually say that Mr. Jordan participated in the robbery. The evidence does not show that. The witnesses on the stand actually testify that they could not even tell whether those participants in the attempted robbery that day were male or female. As a matter of fact, there was some testimony by someone in the bank that one of the attempted robbers actually carried a 45 semi-automatic weapon in his hip. But no one could actually identify that it was Mr. Jordan carrying the weapon or who was carrying the weapon at all. As a matter of fact, the officers also testified at trial that they did DNA analysis on five pieces of evidence, some clothing that was supposed to have been dumped in a backpack post the robbery. No DNA test or analysis demonstrated that Mr. Jordan was a participant in the robbery. Officers also- Why couldn't they have relied upon the testimony of Ms. Loring? Ms. Loring's testimony is not credible, Your Honor, because Ms. Loring, she testified that she had known Mr. Jordan only about four days to a week before the trial. She said- She had him on Instagram, didn't she? Yes, Instagram. And she claimed that she was on the phone with him during the robbery the entire time. But then she comes back and says she could not hear him in the bank. She actually said that she could not testify that he made any statements from the bank. She changed her testimony saying that it was not his voice at all on the phone. Why is that a jury issue? Excuse me, Your Honor? Why isn't that just a jury issue, whether or not her testimony is credible or not in conjunction with Mr. Anderson's testimony? Well, she testified also that she did not know who walked into the bank to commit the robbery and that she never heard him on the phone. Right, well, the jury had all of that, and so why isn't that just a jury issue on whether she can believe about what she did say in light of what she didn't know? Well, Mr. Jordan's argument is that under Jackson, here the government had to prove it beyond a reasonable doubt. And that in order to get this conviction, it was done by piling inference upon inference. And we believe that in this case, the jury got it wrong, because when you compare the testimony that she really didn't know who went in the bank, she really didn't know who she was talking to on the phone, and that she actually admitted that none of what she had testified to on direct regarding these matters could be verified on cross. That her testimony was incredible. And at the same point, the other witness, Mr. Anderson, who also testified regarding Jordan, at the end of the day on cross-examination, although he testified on direct, that Jordan asked him to rob the bank, on cross-examination, he testified that he really didn't know who was in the Tundra truck on the day of the robbery. Because the government's theory of the case is that it was Mr. Jordan who actually jumped into the tenant Tundra to commit the robbery. But there was nobody who could say that Jordan was in the robbery. Jordan was actually in that Tundra. Which leads me to the second issue, that the evidence that Mr. Wise co-defended in this case and Jordan, our brothers, was prejudicial to Mr. Jordan in this case because without that evidence, there is nothing really linking Mr. Jordan to the crimes charged. That evidence is prejudicial because by entering that into the trial, it allowed the jury to infer that because Mr. Wise was actually stopped in a car fleeing the robbery and that he and Mr. Jordan were brothers. The jury impermissibly inferred that if Wise was involved in the robbery, then Mr. Jordan must have been involved in the robbery as well, so. Aiding and abetting, does he have to actually be in the robbery itself? Or the fact that he's hiring the people and doing the dry runs and all of that, is that sufficient? Well, there's no evidence in this, in the record here, that he actually hired anyone to participate. Well, I thought he hired Ms. Loring, or God said, want to make some easy money or something. Well, there's no evidence of that. Is that not in the record? No, but he did not hire her. Your Honor, I see that my time is expiring, but I can answer your questions. Please do. So, there's no evidence that, there's no testimony in the record that he said, do you want to make some easy money? He testifies that he asked, does she want to make some easy money? But there's no evidence in the record that Mr. Jordan hired her to participate in the robbery. Well, isn't that, do you want to make some money? Well, come meet here at this place. Isn't that hiring somebody? I don't think they have a employment engagement agreement or something, so. If it were true that Mr. Jordan asked her, did she want to make some money, then that would mean that she voluntarily went with someone to participate in a robbery that day. But it doesn't necessarily mean that Mr. Jordan or anyone else said that I will give you X amount of money if you participate in a robbery. So, our position is no, it was not a hire. Your Honor, my time has expired. Thank you. Okay, and you've saved time for rebuttal. Thank you very much, Ms. Drummond. Mr. Williams. May it please the court. Four dozen officers, two dozen cameras, half dozen sets of cell phone records, and two cooperating witnesses. No rational fact could have convicted Jonathan Nico Weiss in this trial. Weiss was convicted and sentenced for aiding and abetting an aggravated credit union robbery absent any evidence of an affirmative act in furtherance or advanced knowledge of the aggravating circumstances. Instead, the government substituted a supposed sibling relationship between Jordan and the defense counsel's objection for an affirmative act or full scope of knowledge. The prejudice of this erroneous admission was shown because the trial court prosecutor referenced it four times in closing argument. Every time he got to Jonathan Nico Weiss, he referenced the fact that he was Walter Freeman Jordan's brother. So, there are three issues. The insufficient evidence on the whole and then also as it's required the advanced knowledge of the aggravating elements under Rosamond analysis in this court's decision in Carbines. And the erroneous admission of the hearsay about the alleged sibling relationship, because these had a cascading effect across the entire trial, particularly with respect to the firearm enhancement under the sentencing guidelines. And then the lack of a mitigating role reduction in sentencing. Now, Rosamond says that for aiding and abetting, you have to have affirmative knowledge, you have to share the intent for the full scope, and you have to take an affirmative act. There is no affirmative act in this case. And the only thing there are are inferences which are unreasonable. This court has held that you can't pile inferences upon inferences, but also that you can't use unreasonable inferences to sustain a conviction. But that's what has happened in this case. Because in the government's response to our brief, they point to two things that suggest inferences. One, that Weiss went along to instruct DeAndre Santee, and two, that he went to use the phone because Santee was driving. Neither of these is reasonable, because the record demonstrates Daryl Anderson testified that after he received instructions from Jordan outside of Weiss's presence, he told Santee what they were going to do. He also testified, and these citations are in the record, that he was on the phone with Santee for the whole ride. He also told him who to follow when they were near the bank, and that car followed a constable. And lastly, Santee knew Walter Jordan, according to the evidence, just not as well as Anderson did. There's no evidence in the record of an affirmative act by Jonathan Nico Weiss in furtherance of the robbery. This court's decisions say that you have to aid and abet every material element of the offense. In particular, in this case, there's no evidence of an act in furtherance. But also under the Supreme Court's decision in Rosemont, Jonathan Nico Weiss would have had to have had advanced knowledge of the use of a firearm or an assault, which are the aggravated circumstances of this. Because what they're charged with is aggravated credit union robbery. It's a bank or credit union or savings and loan robbery, plus an aggravating circumstance. That's a combination issue. Offense. This circuit in Carbons, relying on Rosemont, and we cite Carbons in our brief at page 27. Apply the Rosemont analysis in a sufficiency opinion to a theft of government money case. Now what's interesting about that is the difference between those two offenses is much more stark in the credit union than it is in that case. Because they said that in that aggravated identity theft case, a 1028A violation, that the defendant had to not only know that, had to have intent to commit the underlying theft of tax money. But had to know they were going to use other people's identities to do it. It's hard, as the government argued in that case, it's hard to see how you can know you're stealing other people's tax money and not know you're using their identities at the same time. That's not in the government, excuse me, this court applied Rosemont and Carbons. In this, it's more distinct. Because all three branches of the United States government have recognized the difference between a credit union robbery and an aggravated one. The code does in 2118 between A and D, it's a crime and then if you hurt somebody or use a gun, it's a higher offense. The sentencing commission, which is a branch part of the judiciary, does two and two be 1.3 or 3.1. Because you get extra points for using a gun. And then lastly, as we cited in the trial court, in our reply, the FBI's own bank robbery statistics that this court can take judicial notice of, that we've cited, that they publish every year, shows firearms are only used in about 25% of bank robberies. The government wants to say that this is a natural and foreseeable consequence or inherent, excuse me, of the crime. That's not true. The case from- What do we do with the Burton case? I'm sorry? What do we do with the Burton case? Doesn't it say that it was a natural and foreseeable, basically, what the government's arguing? It doesn't. If we're talking about the same case, I believe that it's applying a Mississippi bank robbery statute. But again, that is, if you're looking at this, it's not supported by this court's published jurisprudence. It's not supported by the text of the statute itself. The sentencing commission or FBI data. If it was a natural and foreseeable consequence, there'd be no point, it'd be superfluous to have the aggravating portion of the bank robbery statute or the sentencing enhancements. Is this clear error? I mean, is that the standard? I'm sorry? Clear error. I believe the standard for sufficiency is- You're just arguing on the sufficiency, because you were talking about it on the enhancement just a second ago, I thought. That's clearly erroneous on the sentencing portion, Your Honor, yes. You switched back and forth. Well, because the way the government responded, they wanted to shift this court to reasonably foreseeable to justify the natural and probable consequence theory. Something being reasonably foreseeable doesn't necessarily rise to the level of being a natural consequence. What I'm suggesting is that it's not reasonably foreseeable under the data that's available from the FBI, the same Department of Justice arguing in this case. It's not necessarily, but it certainly doesn't rise to natural and probable, which would be the only way they could get around a Rosamond sufficiency analysis under carbons. You've saved time for rebuttal, counsel. Thank you. Thank you, Your Honor. Seth Gagliardi for the United States, Your Honor. May it please the court. Mr. Wise is guilty of aggravated bank robbery because the evidence is sufficient in this case. And as this court's aware, the standard of review is a no vote, but it's highly favorable to the prosecution in this case, because all the evidence and all reasonable inferences against the defendant are to be drawn in favor of the prosecution in this case. While this is a circumstantial case, and it is closer than Mr. Jordan's case, the reasonable inferences and the circumstantial evidence in this case establish the guilt beyond a reasonable doubt of Mr. Wise. And that is what the rational jury in this case found. The question is whether any rational jury can find this. And that's given a very favorable standard of review in this court towards the verdict. Now, in this case, the circumstantial evidence was that there was surveillance on the 24th involving Mr. Jordan in connection to that 6601 phone number. That officer, Kerry Richards, observed Mr. Jordan driving the red Volkswagen or maroon Volkswagen out to the Cinco Ranch area of Katy, about 30 miles away from the third ward area of Houston the day before the robbery. And their belief was that Mr. Jordan was surveilling a bank or a credit union out there in preparation for a robbery. Well, as we know from Mr. Anderson and Ms. Loring's testimony, that robbery was set up for July 25th and did, in fact, take place after Mr. Jordan recruited them. That comes into play as regards to Mr. Wise because he has observed driving that red Volkswagen Jetta that next morning and then the phone that is also associated with Mr. Jordan is found in that Nissan Rogue when it's pulled over after the robbery. And Mr. Anderson's testimony establishes that that phone was not in that Nissan Rogue before Mr. Anderson traded his place in the Rogue with Mr. Wise for his place in the Volkswagen Jetta before these four vehicles traveled from the third ward approximately 30 miles out to the Katy area. So Mr. Wise rode in all four vehicles at some point? No, Your Honor. Only two? Yes, in two vehicles, the Volkswagen that's associated with Mr. Jordan from the reconnaissance run the day before, and also in the Nissan Rogue. Mr. Anderson's testimony established that there were two phones in that Rogue before Mr. Wise got in, there was his phone and Mr. Santee's phone. When that vehicle's pulled over later, trailing the tundra as it flees from the credit union robbery, there are three phones. There's the 2498 phone, which is associated with Mr. Jordan through the same circumstantial evidence that the 6601 phone is associated. It belongs and is registered to Anna Rogers, who is the girlfriend of Mr. Jordan, and is also associated with an email known to Mr. Jordan, wacko.freeman at gmail.com. That phone, the 2498 phone, and the 6601 phone are on this conference call throughout the hour leading up to the robbery at the credit union, in which Ms. Loring testifies that she hears voices, particularly Mr. Jordan, in the course of this robbery. She's instructed to go into the bank by Mr. Jordan to see if there is security in that bank, and Mr. Wise is in the vehicle. Now, Mr. Wise presented this theory to the jury at trial, that he's merely present, he has no knowledge. And the jurors made reasonable inferences based upon Mr. Wise's presence that morning in the robbery on Braymont Street, and the record is unclear as to that name. It is Braymont, not Greenmont, and he's in that area, he's driving that Volkswagen. He trades that Volkswagen out to Mr. Anderson to use in these counter surveillance runs, and then he gets in the passenger seat. And the jurors found that circumstantial evidence, it can be reasonably inferred, to say that he got into that rogue, because as Mr. Anderson testified, Mr. Santee didn't know what was going on. And they used the circumstantial evidence in that case, and a reasonable inference to determine that Mr. Wise was there to assist Mr. Santee in the course of this robbery in these counter surveillance runs. Is there actual evidence in the record that he was on the conference call, or is it just that the phone was in the car where he was? It's the circumstantial evidence, and that inference from the circumstantial evidence. The circumstantial evidence that he was in the phone, in the car where the phone was, and the phone was involved in the call. Yes, Your Honor, and there was- We don't know that he was on the call, is that correct? No, Your Honor, no direct evidence that the phone was seen in his hand during the call. But we do have evidence from direct testimony of Mr. Anderson stating what that vehicle was doing. It was following the marked units. It was doing counter surveillance runs. We have testimony that vehicle was parked right across from the bank when this all  was that Mr. Wise was merely present, had no idea what was going on, couldn't have known. The jurors rejected that theory. They didn't find it reasonable. They didn't find it rational. Now, that vehicle also pursues the Tundra out up north on 99 as it flees from this credit union robbery. Mr. Wise is still in that vehicle. At that point in time, a gun had come out in front of the credit union, and it had been pointed at a customer, Mr. Nolan, who was attempting to enter that bank. Now, there is no direct testimony or evidence that Mr. Wise observed that. But it was certainly out in front of the bank, and it was directly across from where that road was parked, observing the bank and looking out for law enforcement. So again, circumstantial evidence that unless Mr. Wise was paying absolutely zero attention from the passenger seat of that vehicle, which the jury rejected, that he would be aware of what was going on at that bank, in front of that bank, and the actions that were going on that day. As to the Roseman instruction, I'm happy to answer questions about that. Particularly, the Carbons' opinion, I think, is far too much read into that case, as far as Mr. Wise' contention, that it forecloses any question as to whether Roseman specifically applies to an 18 U.S.C. 2113 A and D prosecution. I don't think, under the planned error review standard, that that is a clear and fair case law, both at the time and presently. In fact, Mr. Wise cited in his brief the Baker opinion, which was later reformed and superseded to not address this issue. And specifically in Roseman, note seven says that the natural and probable consequences theory that we advance in our brief is not being addressed by that court. So the application of the law at that time is unclear. It remains unclear, specifically related to the 213 offense. And as far as that goes, it wouldn't qualify as planned error under this court's standards. Unless the court has any further questions, we'll submit on our briefs. Thank you, counsel. Yes, Your Honor. Ms. Drummond, you've saved time for rebuttal. Thank you. Here, the government indicates that on July 24th, the phone number 66, ended in 6601, was under surveillance. And that Jordan was seen in a red Volkswagen. I just wanted to point out to the court that on the day of the robbery, it's alleged that Mr. Jordan was driving a black Tundra. Ms. Loring, in her testimony, she testified that she never heard his voice coming from a Tundra. She testified that she didn't really know who walked into the bank to commit the robbery, and that she never heard Jordan on the phone at all. As to Mr. Anderson, Mr. Anderson also testified that on the day of the robbery, July 25th, he never saw Mr. Jordan enter into any black Tundra. And that the windows were tinted, and no one could actually see inside the Tundra, or who was in the Tundra. And neither of those cell phone numbers were found in his possession. The 6601 was found in Mr. Pace's possession. And as the government indicated, the phone number ending in 2498 was found inside the rogue, when Wise was stopped in the rogue fleeing the robbery. Thank you for your time. Thank you very much. In their argument, the government repeatedly references what Mr. Wise may or may not have known, but they failed to address the other prong that's required in aiding and bedding, which is an actual affirmative act in furtherance. A defendant has to seek, not only share the criminal intent, but has to take some active part to carry it out. And the record in this case is completely devoid of any evidence by an affirmative act by Jonathan Wise. There is simply no evidence of that. And the evidence that is presented is incorrect. Wise did not trade cars with Daryl Anderson. There was evidence in the record on camera that earlier in the day, before the vehicles went on the caravan to Katy, Texas, that he had been in the VW at least an hour before. That's in the record, it's on camera, it's not in dispute. He did not trade vehicles, and he did not switch vehicles. He was a passenger in the Nissan Rogue. And this is on camera both from the officers sitting in the parking lot and the bank camera. The Rogue was parked facing Cinco Ranch Boulevard with a hedge between it and the boulevard, trees, crepe myrtles in the median between it and the credit union, and in the credit union, the gentleman who approached the bank that was confronted with a gun. The surveillance cameras in the record offered as trial exhibits show that the robber, the masked robber in the bank, pointed the gun. He was not in front of the bank, that did not occur in front of the bank. It occurred in what we would call a foyer or a narthex if it was a church between the bank lobby and the sidewalk. There's this double set of doors, an area where you have floor mats, and then another set of doors. That gentleman, Mr. Nolan, was approaching, the bank robber was inside the first set of doors, and he showed the gun to that gentleman, and he turned around, walked away, and called the police. There's no evidence in the record, in fact, to the contrary, through the indisputable video evidence admitted, that that is an obstructed view from where these people were. Even then, there's no evidence of an affirmative act by Wise. Is his getting in the car with Mr. Santee could not be an affirmative act? Not according to the jury instructions, no, Your Honor, and not according to this court's case law. Mere knowing, being merely a knowing spectator to a crime does not rise to the level of aiding and abetting. Now, is getting in the car, for the circumstantial evidence point of him helping, in order to be helpful to Mr. Santee? There is no evidence of what he would have done, or what he did to be helpful. It's curious, because Anderson testified at pages 970 to 972, and this is while Wise was elsewhere, that he told Santee, just follow me, this is where we're going to go. And then Anderson testifies that Wise isn't around when he gets instructions from Jordan at 965 to 70, and that he was on the phone with Santee the whole ride. He never says Wise is on the phone. So it's unclear what Wise's role would have been.  Thank you, Your Honor. Thank you. This case is submitted. We note that Mr. Williams and Ms. Jarman are both court appointed, and we appreciate your service to the court in this matter. Thank you.